IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**JUL 2 7 2017**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

CLARENCE EDWARD WHITAKER, )
for himself and as Administrator of the )
Estate of Shannon Marie Whitaker, )
deceased, )
         )    Civil Action No. 7:17CV00055
         )
       Plaintiff, )    **MEMORANDUM OPINION**
         )
v. )    By: Hon. Glen E. Conrad
         )    United States District Judge
HYUNDAI MOTOR COMPANY, and )
HYUNDAI MOTOR AMERICA, INC., )
         )
       Defendants. )

Plaintiff, Clarence Edward Whitaker, as executor of the estate and as representative of the heirs and next of kin of Shannon Marie Whitaker, brings this diversity action arising out of an incident in which Shannon Whitaker was killed. The matter is currently before the court on defendants' partial motions to dismiss.[1] For the reasons stated, the motions will be granted.

## Background

The following summary of the facts, taken from the plaintiff's complaint, is accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On or about March 24, 2015, plaintiff and his wife, Shannon, ("the Whitakers") purchased a used 2007 Hyundai Santa Fe vehicle ("the vehicle") from Motor Mile Kia, a dealer authorized by Hyundai Motor America, Inc. ("HMA"). Compl. ¶ 8, Docket No. 1. The Whitakers purchased the vehicle used without substantial modifications or alterations from its original condition. Id. ¶ 9. On October 16, 2015, the vehicle, with its engine turned off and the key

---

[1]      Hyundai Motor America, Inc. filed a motion to dismiss, Docket No. 9, to which Hyundai Motor Company joins in the reasoning and incorporates into its own motion to dismiss. See Docket No. 20.

removed from the ignition cylinder, rolled forward from the driveway of the Whitakers' residence towards the side of the house, pinning Shannon Whitaker's head and neck between the car door and the vehicle frame. The Whitakers' two minor children found their mother trapped and called 911. Compl. ¶ 11-12. Clarence Whitaker arrived at the scene approximately fifteen minutes later, where he found rescue personnel attempting to free Shannon Whitaker, who was already determined to be deceased. Id. Shannon Whitaker died at age 42, and her cause of death was asphyxia due to torso compression by the vehicle. Id. ¶ 14. When Shannon Whitaker died, the ignition cylinder was in a position other than "LOCK" and the gear shift selector was in a position other than "Park," despite the ignition key not being in the ignition cylinder. Id. ¶15.

Several years prior to this incident, on April 15, 2009, Hyundai Motor Company ("HMC") notified the National Highway Traffic Safety Administration that it was conducting a safety recall so that it could replace the stop lamp switches on some of its vehicles, including the 2007 Hyundai Santa Fe model. Id. ¶ 18. According to the recall notice, the defect in the stop lamp could cause "interference with proper functioning of the antilock brakes." Id. ¶ 19. HMC failed to include the vehicle purchased by the Whitakers in this recall. Id. ¶ 18.

Defendants HMC and HMA issued other safety recalls in March and April of 2013, also because of a potentially malfunctioning stop lamp, which "when the ignition is in the 'ON' position, the transmission shifter may be able to be moved out of Park without first applying the brake . . . , [which] may lead to unintentional movement of the car." Id. ¶ 20. The safety recalls in 2013 did not apply to the Whitakers' vehicle, as it only applied to Santa Fe vehicles made after April 1, 2007, and the Whitakers' Santa Fe was made prior to April 1, 2007. Id. ¶ 21.

Plaintiff alleges the following counts: (I) that defendants negligently designed, manufactured, distributed, and placed the Whitaker's vehicle into the stream of commerce; (II)

2

that defendants breached the implied warranties of merchantability and fitness for a particular

purpose; (III) that defendants failed to warn foreseeable consumers despite the fact that they

knew or should have known of the defective and unreasonably dangerous condition of the Santa

Fe vehicles generally; (IV) that defendants failed to warn the Whitakers about the unreasonably

dangerous condition of the specific vehicle that the Whitakers bought; (V) that defendants'

breach of their duty to exercise ordinary care in the design, manufacture, distribution, and sale of

a product that is reasonably safe for the purpose for which it was intended and defendants'

failure to warn proximately caused Shannon Whitaker's death; and (VI) that defendants acted

with willful and wanton negligence in conscious disregard or reckless indifference to the

consequences. Plaintiff seeks $17.5 million in compensatory damages and $350,000 in punitive

damages. The defendant seeks to dismiss a part of count II and the request for punitive damages

in count VI. The matter has been fully briefed and is ripe for review.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for

dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive

dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6)

motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual

inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244

(4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge[] [his] claims across the line from

conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359,

364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The

complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570.

**Discussion**

### I.    Implied Warranty of Fitness for a Particular Purpose

Defendants have each moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to partially dismiss count II. Defendants argue that the complaint does not and cannot allege the requisite facts to sustain a claim of breach of the implied warranty of fitness for a particular purpose, and that the complaint fails to allege willful or wanton misconduct or actual malice required for punitive damages.

To recover for breach of the implied warranty of fitness for a particular purpose, a plaintiff must demonstrate that "(1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment." Medcom, Inc. v. C. Arthur Weaver Co., 348 S.E.2d 243, 246 (Va. 1986). "A claim for breach of warranty for a particular purpose requires a plaintiff to allege that the product failed to serve a purpose other than its ordinary purpose and peculiar and unique to the plaintiff." AIU Ins. Co. v. Omega Flex, Inc., No. 3:11CV00023, 2011 WL 2295270, at *2 n.2 (W.D. Va. June 9, 2011) (citing Va. Code § 8.2-315 cmt. 2) (Moon, J.). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." Va. Code § 8.2-315 cmt. 2.

4

Here, defendants contend that plaintiff's claim fails for two reasons: (1) because the plaintiff has not pled any "particular purpose" as meant by the comments to the statute providing the right of action for the implied warranty of fitness for a particular purpose, and (2) because the plaintiff has failed to plead facts suggesting that defendants knew or had reason to know the particular purpose for which the Whitakers were buying the Santa Fe. Plaintiff asserts that it has pled a particular purpose: the reasonably safe transportation of individuals and families.

In this case, the court finds that the reasonably safe transportation of individuals is the ordinary purpose of a motor vehicle. Cf. Lowe v. Mercedes Benz of N. Am., Inc., 1996 WL 694433, at *3 (4th Cir. Dec. 5, 1996) (unpublished) ("As to any implied warranty of merchantability, . . . [the vehicle] was at all times fit and used for its ordinary purpose—transportation."); Enobakhare v. Carpoint, LLC, No. 08-CV-4798, 2011 WL 703920, at *9 (E.D. N.Y. 2011) ("[C]ourts have determined that a car's ordinary purpose is 'to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner.") (citations omitted) (omission in original). From the facts pled in the complaint, plaintiff has failed to assert any particular purpose for which the vehicle was acquired.

Additionally, the plaintiff concedes that there was no conversation between the Whitakers and the defendants about any purpose for which the Whitakers would use the vehicle. See Pl.'s Resp. in Opp'n 2, Docket No. 12. "Because there was never any communication between [the Whitakers] and [the defendants], . . . [the Whitakers] did not, in fact, rely upon [the defendants'] skill or judgment in furnishing goods suitable for a particular purpose." Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 318 (4th Cir. 1998). In sum, plaintiff has not "nudged [his] claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, as plaintiff has not alleged sufficient facts to support each element of a claim for breach of

the implied warranty of fitness for a particular purpose. Accordingly, the court will partially dismiss count II.

## II.    Punitive Damages

In count VI, plaintiff alleges that "[a]ll of the injuries, wrongful death, damages and loss . . . are the direct and proximate result of the Hyundai Defendants' willful and wanton negligence in conscious disregard and/or reckless indifference to the consequences of their conduct . . . ." Compl. ¶ 45. Plaintiff argues that because defendants issued a recall but did not include the Santa Fe purchased by the Whitakers, reasonable minds could differ as to whether the defendants acted with willful and wanton misconduct, warranting punitive damages. Plaintiff further cites a number of cases from this district in which a request for punitive damages was not dismissed because "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6).'" See Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 620, 631 (W.D. Va. 2014) (Urbanski, J.); MCI Commc'ns. Servs. v. MasTec N. Am., Inc., No. 3:17CV0009, 2017 WL 2274492, at *3 (W.D. Va. May 24, 2017) (Moon, J.).

"A claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." Woods v. Mendez, 574 S.E.2d 263, 268 (Va. 2003). "Virginia law imposes a heavy burden on a plaintiff seeking punitive damages." Cummings v. Fisher-Price, Inc., 857 F. Supp. 502, 505 (W.D. Va. 1994) (Michael, J.). Willful and wanton negligence is acting with a "reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Harris v. Harman, 486 S.E.2d 99, 101 (Va. 1997). Unlike gross negligence, willful and wanton negligence "requires an actual or constructive consciousness that injury will result from the act done or

6

omitted." <u>Alfonso v. Robinson</u>, 514 S.E.2d 615, 618 (Va. 1999). It is the kind of conduct that goes "beyond that which shocks fair-minded people." <u>Harris</u>, 486 S.E.2d at 102.

"The cases upholding punitive damages awards thus involve conduct approaching criminal negligence, or reckless indifference in the face of a known, grave danger." <u>Cummings</u>, 857 F. Supp. at 505. For example, the Supreme Court of Virginia "held that the failure to correct a flawed design, even if the manufacturer knows that the design is hazardous, does not automatically give rise to punitive damages." <u>Id.</u> at 506 (citing <u>Ford Motor Co. v. Bartholomew</u>, 297 S.E.2d 675, 683 (Va. 1982)). Similarly, the Supreme Court of Virginia refused to allow a claim for punitive damages to move forward when the defendant had indeterminate blood alcohol content, drove on the wrong side of the road with one headlight out, had two previous DUI convictions, and suffered from a form of night blindness. <u>Hack v. Nester</u>, 241 Va. 499, 506 (1988). In sum, Virginia courts disfavor punitive damages, assessing them "only in cases involving the most egregious conduct." <u>Simbeck, Inc. v. Dodd Sisk Whitlock Corp.</u>, 257 Va. 53, 58 (1999) (citing <u>Bowers v. Westvaco Corp.</u>, 244 Va. 139, 159 (1992)).

Here, the mere fact that defendants did not specifically include the Whitakers' Santa Fe in the 2009 recall and failed to warn the Whitakers of the potential defect is not the type of egregious conduct that "shocks fair-minded people." <u>Harris</u>, 253 Va. at 340-41; cf. <u>Dudley v. Bungee Int'l Mfg. Corp.</u>, 1996 WL 36977, at *3 (4th Cir. Jan. 31, 1996) (unpublished) (finding no willful or wanton misconduct when the defendants took some action and exercised some care for the safety of others). The plaintiff has included no facts that would indicate that defendants' actions approached "criminal negligence[] or reckless indifference in the face of a known, grave danger." <u>Cummings</u>, 857 F. Supp. at 506. Additionally, the complaint fails to allege any "actual or constructive consciousness that injury would result" from failing to include the Whitakers'

7

vehicle in the 2009 safety recall. Alfonso, 514 S.E.2d at 618. Furthermore, this case is distinguishable from the cases cited by plaintiff. In Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc. and MCI Commc'ns Servs. v. MasTec, in addition to discussing how a request for punitive damages is not a separate cause of action, both Courts nevertheless found that plaintiff had alleged sufficient facts to survive a motion to dismiss. Charles, 21 F. Supp. at 632; MCI Commc'ns. Servs., 2017 WL 2274492, at *3; see also Coogan-Golden v. Wal-Mart Stores East, LP, No. 5:15CV00054, 2017 WL 963235, at *2 (W.D. Va. Mar. 13, 2017) (Dillon, J.). That is not the case here. Therefore, because the plaintiff has not included facts that could plausibly give rise to punitive damages, the court will grant the defendants' motions to dismiss count VI.[2]

## Conclusion

For the foregoing reasons, the court will grant the defendants' partial motions to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 27th day of July, 2017.

_____
United States District Judge

---

[2]     If, however, discovery provides a factual basis tending to support a request for punitive damages, the plaintiff may move to amend his complaint.